IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JASON MCGEHEE                                          PETITIONER

VS.                          Case Number: 5:03-CV-143 JMM

LARRY NORRIS, Director of the
Arkansas Department of Correction                RESPONDENT

## ORDER

Pending is Petitioner's Writ of Habeas Corpus [Doc. No. 1], brought under 28 U.S.C.

§ 2254, the Antiterrorism and Effective Death Penalty Act of 1996 [AEDPA] and Respondent's

Response to the Habeas Petition [Doc. No. 6]. Petitioner filed a Reply [Doc. No. 9] to the Response

and Respondent filed a Sur Reply [Doc. No. 10].

Petitioner, Jason Farrell McGehee, was convicted of kidnaping and capital murder by a jury

in Boone County Circuit Court on January 8, 1998. McGehee was convicted of capital murder in the

death of John Melbourne, Jr. and was sentenced to death by lethal injection for this offense. He was

sentenced to life imprisonment on the charge of kidnaping Melbourne.

Having exhausted his remedies at the state level, McGehee filed the current petition seeking

relief on five separate grounds: (1) McGehee's constitutional rights were violated by the trial court's

refusal to provide funds for additional psychiatric examination and investigation and also failing to

grant a continuance for the investigation; (2) McGehee's constitutional rights were violated by the

exclusion of relevant mitigating evidence; (3) McGehee's constitutional rights were violated because

1

his death sentence is disproportionate to his codefendants' sentences; (4) McGehee's death sentence

violates his constitutional rights because witnesses against McGehee have recanted or amended their

accounts in a way that mitigates his role in the offense; (5) McGehee's constitutional rights were

violated by the use of victim impact testimony in violation of *Ring v. Arizona.*

For the reasons stated in this Order, Petitioner's Petition for Writ of Habeas Corpus is

GRANTED in part and DENIED in part.

## I. Factual Background

Several individuals were involved in the case including; Jason McGehee, Ben McFarland,

Robert Diemert, Chrisopher Epps, Candace Campbell, Anthony Page and John Melbourne, Jr. The

facts were set forth by the Arkansas Supreme Court on direct appeal in McFarland's appeal.

> In the summer of 1996, McFarland (age 17) was part of a group of friends who stayed
> together at a house at 1123 North Spring Street in Harrison. The residence was rented
> by Robert Diemert (age 27), who had lost his job and allowed Jason McGehee (age
> 21), the leader of the group, to take over the premises. The members of the group, who
> were in their teens and early twenties, lived by cashing stolen and forged checks. They
> included McFarland, McGehee, Christopher Epps (age 19), Candace Campbell (age
> 17), Anthony Page, and John Melbourne, Jr. (age 15).

> On August 19, 1996, McGehee sent Melbourne into Harrison to cash a stolen check.
> Melbourne went to Cooper Shoes, which is on the square, and was told that the check
> was not correctly filled out. Melbourne returned later that day with Anthony Page and
> was able to cash the check and purchase a pair of shoes. The manager of the store was
> suspicious of the two and called the bank. When he discovered the check was stolen,
> he called the Harrison Police Department. While the police officers were at the store,
> they saw Melbourne across the street and stopped him for questioning. Melbourne told
> the officers about the stolen checks and other stolen property that could be found at
> or near the house on North Spring Street. He was released into his father's custody.

> The police officers went to the residence. McGehee, Campbell, Epps, and McFarland
> saw them and hid in the back of the house. They were able, however, to observe the
> officers as they searched and found the stolen property and concluded that Melbourne,
> who had not returned, must have "snitched" to the police officers. Later that day,
> McFarland and Epps saw Melbourne in town and asked him to stop by the house. He

did and was immediately set upon by McGehee and Epps. He was beaten by the group, including McFarland, for the next one and one-half to two hours. Later that evening, McGehee decided they all should go to Utah, where he had some relatives -presumably in order to avoid arrest for the stolen and forged checks. Melbourne's hands were bound, and he, along with Epps, McFarland, McGehee, Campbell, and Diemert, left for Utah in Diemert's car.

Campbell and Diemert testified at McFarland's trial that during the trip someone asked Melbourne how it felt to know he was going to die. Campbell testified that it was either Epps or McFarland, while Diemert testified it was McGehee. The group traveled to an abandoned house in Omaha, Arkansas. They entered the house and again began to beat Melbourne. The testimony established that everyone there participated in the beating at varying levels. At one point, Melbourne tried to escape but only made it to the kitchen before he was caught by McGehee, Epps, and McFarland. There was testimony that McGehee hit Melbourne's head with a box fan and that others hit him with sticks and burned him with a candle wick. This beating lasted approximately an hour. After the beating, McGehee, Epps, and McFarland took Melbourne out behind the house and walked down a trail into a wooded area. Campbell and Diemert stayed in Diemert's car.

Epps, McFarland, and McGehee took turns strangling Melbourne until he died.[1]

## II. Procedural History

McGehee appealed his conviction to the Arkansas Supreme Court. The court affirmed the convictions and sentences.[2] On September 24, 1999, McGehee filed a petition for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure. He also filed an amended petition for post-conviction relief on December 14, 1999. A hearing was held in Boone County Circuit Court, and the court denied McGehee's requested relief on January 14, 2000. McGehee appealed the denial of post conviction relief to the Arkansas Supreme Court. The Supreme Court found that the trial judge had failed to make specific findings of fact and conclusions of law as required by Rule 37.5 of

---

[1]*McFarland v. State*, 337 Ark. 386, 389-391, 989 S.W.2d 899 (1999).

[2]*McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999) (hereinafter *McGehee* I).

3

the Arkansas Rules of Criminal Procedure.[3]   On September 4, 2001, the petition for post conviction

relief was denied and subsequently affirmed by the Arkansas Supreme Court.[4]   Greene exhausted his

state remedies and filed this petition for writ of habeas corpus on April 10, 2003.

III. <u>Standard of Review</u>

Section 2254 of Title 28 of the United States Code permits a prisoner in state custody to

petition a federal court for a writ of habeas corpus "only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States."[5]   Section 2254(d)(1), as

amended by the AEDPA, reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court proceedings unless the adjudication
> of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme Court of the United
> States.[6]

For a petitioner to obtain federal habeas relief, he must first demonstrate that his case satisfies

the condition set by § 2254(d)(1).[7]   A state court decision will be viewed as "'contrary to' clearly

established federal law if the state court has applied a rule that directly contradicts Supreme Court

precedent or has reached a result opposite a result reached by the Supreme Court on 'materially

---

[3]*McGehee v. State*, 344 Ark. 602, 43 S.W.2d 125 (2001) (hereinafter *McGehee* II).

[4]*McGehee v. State*, 348 Ark. 395, 72 S.W.2d 867 (2002) (hereinafter *McGehee* III).

[5]28 U.S.C. § 2254 (1996).

[6]*Id.*

[7]*Williams v. Taylor*, 529 U.S. 362 (2000).

4

indistinguishable' facts."[8] A state court decision will be viewed as an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case."[9] The question is whether the state court's application of clearly established federal law was objectively reasonable. An unreasonable application of federal law is different from an incorrect application of federal law.[10] In sum, a state court's application of federal law might be erroneous, in this Court's independent judgment, yet not objectively unreasonable.[11] A habeas petitioner may also seek relief on the ground that, in light of the evidence before the state court, that court made an unreasonable determination of the facts. However, the state court's findings are subject to a deferential standard of review; in fact, these findings are presumed correct unless the petitioner can rebut those findings with clear and convincing evidence.[12]

Furthermore, the state court should have an opportunity to address a petitioner's claims of constitutional error before those claims are presented to the federal court.[13] In order to fairly present a federal claim to the state court, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a

---

[8]*Kinder v. Bowersox*, 272 F.3d 532, 538 (8th Cir. 2001) (citations omitted).

[9]*Williams*, 529 U.S. at 413.

[10]*Williams*, 529 U.S. at 409-10.

[11]*Kinder*, 272 F.3d at 538.

[12]28 U.S.C. § 2254(e)(1); *Kinder*, 272 F.3d at 538.

[13]*Coleman v. Thompson*, 501 U.S. 722, 731-33 (1991).

pertinent federal constitutional issue in a claim before the state court.[14]  Even when a petitioner has

technically met the exhaustion requirement, the federal court still may be prevented from considering

the federal habeas claim if it is procedurally defaulted.  "A habeas petitioner who has failed to meet

the State's procedural requirements for presenting his federal claims has deprived the state courts of

an opportunity to address those claims in the first instance."[15]  A claim may be lost due to procedural

default at any level of state court review:  at trial, on direct appeal, or in the course of state post-

conviction proceedings.[16]

> A petitioner can excuse the procedural default of his claims in state court, and obtain
> federal habeas review of those claims, only if the petitioner can demonstrate either:
> (1) cause for the default and actual prejudice as a result of the alleged violation of
> federal law; or (2) that the failure to consider the claim will result in a fundamental
> miscarriage of justice, such as the conviction of one who is actually innocent.  Cause
> for the procedural default exists, for example, when counsel has been constitutionally
> ineffective or when an objective, external impediment prevented counsel from
> complying with the state's procedural rule.  To demonstrate prejudice, a petitioner
> must show not merely that the errors at trial created a possibility of prejudice, but that
> they worked to his actual and substantial disadvantage, infecting the entire trial with
> error of constitutional dimensions . . . [such that he] was denied fundamental fairness
> at trial.[17]

However, despite default, a federal court may address the merits of Petitioner's claim if it is

the simpler issue.[18]

---

[14]*McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citations omitted).

[15]*Coleman*, 501 U.S. at 731-33 (1991).

[16]*Kilmartin v. Kemna*, 253 F.3d 1087, 1088 (8th Cir. 2001).

[17]*Noel v. Norris*, 194 F.Supp. 2d 893, 903-904 (E.D. Ark. 2002) (citations omitted).

[18]*Long v. Iowa*, 920 F.2d 4, 5 n.2 (8th Cir. 1990) ("Because the merits of this case are
simple and plain, certainly plainer and simpler than these procedural defenses, we have chosen to
go directly to the merits."); *see also Stephens v. Norris*, 83 F.3d 223, 224 (8th Cir. 1996) ("[W]e

## IV.  Discussion of Claims

### Claim #1: McGehee's constitutional rights were violated by the trial court's refusal to provide funds for an additional psychiatric examination and investigation and also failing to grant a continuance for the investigation.

McGehee's first claim is that his constitutional rights were violated when the trial court refused to provide funds for an additional psychiatric evaluation and investigation and for failing to grant McGehee a continuance to explore his psychiatric issues.  The Respondent asserts that McGehee's claim is defaulted and not preserved for review.

In order to prevail, McGehee must demonstrate that the Arkansas Supreme Court's decision was contrary to or unreasonable application of federal law.[19] Additionally, he must have presented and exhausted his state remedies before he may present his claim.[20]

*Ake v. Oklahoma* provides the constitutional guarantee to funding for mental health assistance when mental health is raised as an issue at trial.[21] Arkansas has codified *Ake* and its requirements.

> In Arkansas, the statutory procedures to be followed when the defense of mental disease or defect is raised are found in Ark. Code Ann. § 5-2-305 (Repl.1993). We have repeatedly held that a defendant's right to examination under *Ake* is protected by an examination by the state hospital as provided by this statute. **An evaluation performed under this section does not normally require a second opinion and further evaluation is discretionary with the trial court.** Stated simply, the State is

---

prefer to cut through the potential procedural-bar morass and address the much simpler issue of the merits of Stephens' claim. *See Grubbs v. Delo*, 948 F.2d 1459, 1463 n.3 (8th Cir. 1991), *cert. denied*, 506 U.S. 835, 121 L. Ed. 2d 67, 113 S. Ct. 109 (1992).")

[19]28 U.S.C.A. § 2254 (d)(1)-(2).

[20]*Krimmel v. Hopkins*, 56 F.3d 873 (8th Cir. 1995).

[21]*Ake*, 470 U.S. 68 (1985).

not required to pay for a defendant to shop from doctor to doctor until he finds one who will declare him incompetent to proceed with his trial.[22]

*Ake* provides that when a defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the State is required to provide the defendant access to a competent psychiatrist. Further, the psychiatrist must be one who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. The Supreme Court has explained that defendants must have access to the raw materials integral to the building of an effective defense. Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, it has often reaffirmed that fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversary system. To implement this principle, we have focused on identifying the basic tools of an adequate defense or appeal, and we have required that such tools be provided to those defendants who cannot afford to pay for them.[23]

McGehee requested an evaluation.[24] The evaluation was granted and then conducted.[25] The psychiatrist's report contained the required information pursuant to § 5-2-305 and was then sent to the trial court and lawyers.[26] McGehee then asserted that the evaluation was not adequate and that

---

[22]*Dirickson v. State*, 329 Ark. 572, 576-578 (1997) (citations omitted) (emphasis added).

[23]*Ake*, 470 U.S. at 77 (1985).

[24]R1 at 40.

[25]R1 at 244-45; Doc. No. 1, Exhibit No. 2.

[26]Doc. No. 1, Exhibit No. 2.

8

he needed additional funds to assert a constitutionally sufficient defense regarding guilt and innocence and also the sentencing phase.[27] The trial court denied the request.[28]

Here, McGehee claims his constitutional rights were violated by not being allowed more time and money for his investigation. However, McGehee sought to investigate, discover and present evidence for his mitigation claim, not an *Ake* claim. He was afforded his rights under *Ake*.

"The trial court has wide discretion in granting or denying supplemental psychiatric evaluations. An evaluation performed under this section does not normally require a second opinion, and further evaluation is discretionary with the trial court."[29] Moreover, McGehee did not rely on an insanity defense and the state did not present any psychiatric evidence or evidence regarding McGehee's mental condition.

Despite whether McGehee's claim is defaulted, he has failed to prove that any constitutional violation occurred and also failed to prove that the Arkansas Supreme Court's opinion was contrary to or an unreasonable application of federal law. Finally, as McGehee suggests in his petition, his claim fits more squarely within Claim #2, his mitigation claim.[30]  Claim #1 is denied.

---

[27]R1 at 276-77; 310-311.

[28]R2 at 478-79.

[29]*Dirickson v. State*, 329 Ark. 572, 953 S.W.2d 55 (1997) (citations omitted); *see also Davis v. Norris*, 423 F.3d 868 (8th Cir. 2005); *Richmond v. State*, 320 Ark. 566 (1995).

[30]*See* Doc. No. 1 at 8.

9

Claim #2:  McGehee's constitutional rights were violated by the
exclusion of relevant mitigating evidence.

McGehee next claims that his constitutional rights were violated when the trial court excluded

certain mitigation evidence.[31]  Respondent asserts that the Arkansas Supreme Court's decision was

not an unreasonable application of or contrary to federal law.

In order to prevail, McGehee must prove that the Arkansas Supreme Court's decision was

contrary to or an unreasonable application of federal law.[32]  Additionally, McGehee must have

presented and exhausted his state remedies before he may present his claim to this Court.[33]

Character & Background Evidence

McGehee claims his constitutional rights were violated when the trial court refused to allow

him to present character and background evidence during the sentencing phase.  Further, he asserts

the Arkansas Supreme Court's decision affirming the trial court is an unreasonable application of

clearly established federal precedent.

During the sentencing phase, McGehee attempted to introduce mitigation evidence from three

family members.[34]  The trial court did not find the evidence relevant to mitigation and denied his

request.  McGehee appealed the trial court's decision to the Arkansas Supreme Court. McGehee

---

[31]McGehee claims that two types of evidence were excluded: (1) character and
background information and (2) evidence of codefendants sentences as mitigation evidence.
These claims will be addressed separately.

[32]28 U.S.C. § 2254 (d)(1)-(2).

[33]*Krimmel v. Hopkins*, 56 F.3d 873 (8th Cir. 1995).

[34]McGehee's habeas claim only addresses the testimony of Linda Christensen. The court
finds it helpful to recount several of the mitigation portions of the trial, including pre-trial, to
accurately depict the mitigation evidence that was admitted and excluded.

asserted that the trial court erred with respect to two of his witnesses: LaDonna McGehee and Linda Christensen. The Arkansas Supreme Court denied the relief requested and held that there was no error with regard to LaDonna McGehee's testimony because McGehee's attorney failed to proffer any testimony from her.[35] During the trial, the prosecution objected to the question posed to Ms. McGehee, "is there any statement you want to make to the jury regarding his sentence?" The prosecutor objected to the question, and the trial court sustained the objection. Defense counsel did not make a proffer and the Arkansas Supreme Court held that the issue was not preserved for review.

Next, McGehee's maternal aunt, Linda Christensen, testified on his behalf in the mitigation phase. In denying relief regarding Ms. Christensen's testimony, the Arkansas Supreme Court held,

> Arkansas Code Annotated § 5-4-602(4) (Repl. 1997) provides in pertinent part: Evidence as to any mitigating circumstances may be presented by either the state or the defendant regardless of its admissibility under the rules governing admission of evidence in trials of criminal matters, but mitigation evidence must be relevant to the issue of punishment, including, but not limited to, the nature and circumstances of the crime, and the defendant's character, background, history, and mental and physical condition as set forth in § 5-4-605. [Emphasis added.] Although the rules of evidence are not applicable to the admissibility of mitigating evidence, this statute does not open the way for the admission of irrelevant evidence.
>
> . . .
>
> [McGehee] . . . submits that it was error for the trial court to limit Linda Christensen's testimony in two separate instances. In the first instance, [he] asserts that she should have been allowed to testify as to what happened to [McGehee] dogs when he was a small child. The record reflects that Ms. Christensen was testifying about how [McGehee] mother had made him sleep outside with the dog and would not allow him into the house for seven to ten days. She stated that [McGehee] was living out there with his dog, in a dog run that had no cover on it. She then stated that her family was weird about how they handled their animals. Defense counsel then asked Ms. Christensen what happened to [his] dogs when he was a small child. Ms. Christensen replied that "when he was a baby, he had a Doberman Pincher[.]" The State objected on the ground that the testimony was irrelevant. The trial court

---

[35]*McGehee* I, 338 Ark. at 175 (1999).

sustained the objection. Defense counsel offered no explanation as to why that particular evidence was relevant, stating only that the jury needed to know the background of why [McGehee] did what he did. After the jury retired for deliberation, defense counsel proffered that Ms. Christensen would have testified that [McGehee's] family blamed [McGehee] when the dogs' throats had been slit, telling him that God had killed the animals because he wanted a new puppy.

We cannot say that the trial court's decision to deny admission of the testimony was erroneous, given that, at the time the trial court made its ruling, it was not clear where defense counsel was going with the testimony. Moreover, we cannot say that the trial court erred in finding the evidence irrelevant to [McGehee's] punishment, in light of the fact that the testimony merely described the family's attitude about the death of their dogs, an event that occurred when [McGehee] was just a baby.[36]

The Arkansas Supreme Court also held that there was no error regarding Ms. Christensen's

testimony on family abuse. The court explained its holding,

[McGehee] asserts that Ms. Christensen should have been permitted to testify about [his] stepfather's abuse of [his] sister. It is not clear from [McGehee's] brief how this evidence would be relevant to the issue of his punishment. In any event, this argument is moot because the witness testified that [McGehee's] stepfather beat up his sister and that family services were called in because the girl had big bruises on the back of her legs. Although the State objected to the testimony and the trial court sustained the objection, the jury was never admonished not to consider the evidence. Thus, for all intents and purposes, [McGehee] succeeded in presenting the testimony he sought to introduce.[37]

---

[36]*McGehee* I, 338 Ark at 174-76 (1999).

[37]*McGehee* I, 338 Ark. at 176-177 (1999). In denying McGehee relief, the Arkansas Supreme Court cites to its own opinion where the trial court erroneously limited mitigation evidence. In that case the Arkansas Supreme Court recognized that the United States Supreme Court held, "the majority placed emphasis not on the defendant's culpability for the crime he committed, but instead it held the sentencer should be able to consider any aspect of a defendant's character or record or any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Pickens v. State*, 292 Ark. 362, 366 (1987).

The case law is well established that the use of mitigation evidence during the sentencing phase is clearly permissible.[38] "There is no disputing that [the Supreme] Court's decision in *Eddings* requires that in capital cases 'the sentencer . . . not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' Equally clear is the corollary rule that the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.' These rules are now well established."[39]

However, the trial court must not admit all mitigation evidence. The Supreme Court has explained that: "its opinions should not be taken as 'limit[ing] the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or circumstances of his offense.'"[40] In recognizing that every single item about a defendant may not be relevant for mitigation purposes, the Court stated, "[w]e have never denied that gravity has a place in the relevance analysis, insofar as evidence of a trivial feature of the defendant's character or the circumstances of the crime is unlikely to have any tendency to mitigate the defendant's culpability. ("We do not hold that all facets of the defendant's ability to adjust to prison life must be treated as relevant and potentially mitigating. For example, we have no quarrel with the statement . . . that how often [the defendant] will take a shower is irrelevant to the sentencing determination. . . . Rather, the

---

[38]*See Lockett v. Ohio*, 438 U.S. 586 (1978); *Eddings v. Oklahoma*, 455 U.S. 104 (1982); Ark. Code Ann. §5-4-602.

[39]*Skipper v. South Carolina*, 476 U.S. 1, 4 (1986) (citations omitted).

[40]*Davis v. Coyle*, 475 F.3d 761, 771 (6th Cir. 2007) (citations omitted).

13

question is simply whether the evidence is of such a character that it might serve as a basis for a sentence less than death."[41]

The defendant's right to have a jury consider mitigating circumstances is a fundamental part of the jury's role in a capital sentencing case which this Court has stringently protected.[42] It is settled law that a capital defendant has a plenary right to present evidence going to any aspect of his character, background, or record, as well as to any circumstance particular to the offense, that might justify a sentence less than death.[43]

In 2004, Justice O'Connor addressed the Fifth Circuit Court of Appeal's denial of a certificate of appealibility on a mitigation issue. In that case, the Court explained the relevance standard applicable to mitigating evidence in capital cases:

> [T]he meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding than in any other context, and thus the general evidentiary standard – any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence--applies. We quoted approvingly from a dissenting opinion in the state court: Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value. Thus, a State cannot bar the consideration of . . . evidence if the sentencer could reasonably find that it warrants a sentence less than death.

---

[41]*Tennard v. Dretke*, 542 U.S. 274, 286-287 (2004).

[42]*See Penry v. Lynaugh*, 492 U.S., at 319; *Mills v. Maryland*, 486 U.S. 367, 377 (1988); *Hitchcock v. Dugger*, 481 U.S. 393, 399 (1987); *Skipper v. South Carolina*, 476 U.S. 1, 8 (1986); *Eddings v. Oklahoma*, 455 U.S. 104, 116 (1982); *Lockett v. Ohio*, 438 U.S., at 605.

[43]*Brown v. Payton*, 544 U.S. 133, 149-150 (2005) citing *Penry v. Lynaugh*, 492 U.S. 302, 106 L. Ed. 2d 256, 109 S. Ct. 2934 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982); *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978).

**Once this low threshold for relevance is met, the Eighth Amendment requires that the jury be able to consider and give effect to a capital defendant's mitigating evidence. (We have held that a State cannot preclude the sentencer from considering any relevant mitigating evidence that the defendant proffers in support of a sentence less than death. . . . [V]irtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances).**[44]

Moreover, "[a]fter *Skipper*, . . . the law was clear: A capital jury must be allowed to consider a broader category of mitigating evidence than normally relevant in noncapital proceedings."[45]

"In any capital case a defendant has wide latitude to raise as a mitigating factor any aspect of [his] character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."[46]

Here, the evidence that McGehee sought to introduce was not remote or tenuous. The evidence to be presented was specific to McGehee, his childhood and traumatic events that occurred during his twenty years up to the commission of the crime. There were several instances where mitigation evidence was excluded.

- McGehee filed a pre-trial motion seeking to introduce mitigation evidence.[47]
- McGehee filed a pre-trial motion seeking a continuance to conduct a more thorough psychological examination. He sought to introduce mitigation evidence from the exam regarding McGehee's father's exposure to Agent Orange and the harmful effects that were passed to him from his father.[48]

---

[44]*Tennard v. Dretke*, 542 U.S. 274, 284-285 (2004) (emphasis added) (citations omitted).

[45]*Ayers v. Belmontes*, 127 S. Ct. 469, 482 (2006).

[46]*Roper v. Simmons*, 543 U.S. 551, 568-569 (2005) (citations omitted).

[47]R1 at 297.

[48]R1 at 310.

- McGehee sought to introduce mitigation evidence through his ex-wife, LaDonna McGehee.[49]
- McGehee sought to introduce mitigation evidence through his maternal grandmother, LaRee Peacock.[50]
- McGehee sought to introduce mitigation evidence through his maternal aunt, Linda Christensen.[51]

McGehee first sought to introduce mitigation evidence in a pre-trial motion filed on December 8, 1997.[52] Pursuant to Arkansas Code § 5-4-605, *Skipper* and *Lockett*, McGehee sought to introduce evidence of "cultural differences, his history of alcohol abuse, his impoverished and arduous life, . . . and other like circumstances the defendant suffered throughout his life."[53] "Evidence which would serve as an inference of mitigation which might 'serve as a basis for a sentence less than death.' *Skipper v. South Carolina*, 476 U.S. 1, 4-5 (1985)."[54] The trial judge did not rule on this motion but held it in abeyance pending the guilt determination.[55] During the sentencing phase, the judge permitted some mitigation testimony but also excluded evidence on multiple occasions.[56]

Second, during the pre-trial hearing, McGehee requested a continuance to have a more thorough mental evaluation performed based on the fact that this father had been exposed to Agent

---

[49]R7 at 1364.

[50]*Id.* at 1370.

[51]*Id.* at 1377.

[52]R1 at 297.

[53]R1 at 298.

[54]*Id.*

[55]R2 at 529.

[56]*See* infra for discussion of specific exclusions of evidence.

16

Orange in the Vietnam war.  Counsel wanted to have another evaluation performed to determine if "not only was [it] for culpability as well as ability to assist counsel but since we've got the death penalty here on a capital case, for mitigation reasons.  And so the inheritance of the ill effects of exposure to toxic chemicals by Jason [McGehee] from his father would indeed, we believe, be mitigating."[57]   The court denied the request and stated that it "was not convinced [it would] accomplish anything other than just a delay of the trial."[58]  The court went on to explain its ruling denying the continuance and the motion for additional funds for psychiatric evaluation by stating that counsel had not convinced him there was a need for such.  "I'm not convinced what that has to do with the price of eggs in China.  I don't know what that means in this proceeding."[59]

Third, during the sentencing phase, McGehee called three mitigation witnesses to testify about his background and childhood: LaDonna McGehee, LaRee Peacock and Linda Christensen.  During McGehee's and Christensen's testimony, the court excluded mitigation evidence.

First, during LaDonna McGehee's testimony, the following exchange occurred:

| | |
|---|---|
| Mr. Marczuk: | Did Jason have any, I guess together as a married couple, did you have any plans as far as what he should do in the future? |
| Ms. McGehee: | He wanted to — we were going to go to college together and he wanted to be a veterinarian.  He loved animals. |
| Mr. Marczuk: | I've not talked a lot about this but is there an example that you can tell about his love for the animals you all had? |
| Ms. McGehee: | We had - - |
| Prosecutor Webb: | You honor, I don't think that's appropriate testimony.  I object. |

[57]R2 at 475.

[58]R2 at 478.

[59]R2 at 529-530.

| Mr. Marczuk: | I would argue that once again under 5[-]4-605 for mitigation. I don't know if you want to approach on this or not, but it is definitely is going to go. If there is not an exhaustive list, it'll go to the aggravating. |
| The Court: | Well, I'll sustain the objection.[60] |

Later in the sentencing phase, McGehee also called his maternal grandmother, LaRee Peacock, to testify on his behalf. Ms. Peacock testified about McGehee and his sister's care and whether they were neglected. The following exchange occurred:

| Mr. Marczuk: | Did Robin, [McGehee's mother] neglect those children? |
| Mrs. Peacock: | Well, they were clothed. And like I say, if they didn't go to church, she would be upset. And one time we had gone out there for lunch and I can't remember what Kimber [McGehee's sister] had done, but she made her eat on the basement steps and sat down there crying and it actually spoiled my lunch because I didn't feel like eating. I just, I just lost my appetite. Another time - - |
| Prosecutor Webb: | Your Honor, I'm going - - - I apologize for interrupting but I'm going to object at this time. I don't think the purpose is just to relay incident after incident. The questions are directed and are going to one of the mitigating factors and I think that's appropriate but this - - |
| Mr. Marczuk: | That's fine. |
| Prosecutor Webb: | - - this narrative, I think is inappropriate. |
| Mr. Marczuk: | That's fine.[61] |

As a final mitigation witness, McGehee called his maternal aunt, Linda Christensen. McGehee's attorney had questioned her about McGehee's dysfunctional family and the abuse he suffered. Specifically, she testified that McGehee was forced to sleep in a dog run with his dog with

---

[60]R7 at 1367.

[61]R7 at 1376.

no covering, shelter, bathroom facilities or food for over a week. At the end of that line questioning, the following exchange took place:

| | |
|---|---|
| Ms. Christensen: | . . . He didn't get to come in. She said if he wants to come I, he can knock. So I took him up food, took him up sandwiches. And he was living on [c-rations]. He found some [c-rations] and stuff. And I gave him some tissue papers and he was going to the bathroom outside and he got into the cellar and he got some bottled tomatoes. When we went up there, he had eaten - - - he was eating bottled tomatoes and we were afraid he would get poisoned, get botulism. And he was living out there with his dog. There was no cover on this dog run.[62] |
| Mr. Marczuk: | I'm not going to ask a lot about dogs but apparently some of your family is weird about how they handle their animals? |
| Ms. Christensen: | Yes. |
| Mr. Marczuk: | Can you just elaborate on that? What happened to his dogs even when he was a small child? |
| Ms. Christensen: | When he was a baby, he had a Doberman Pincher - - |
| Prosecutor Webb: | You Honor, I really feel like we're very, very far afield from anything that's relevant to the mitigating circumstances that I know about. I just - - - I mean, I - - |
| Mr. Marczuk: | The jury needs to know that background of why this man did what he did. It's a terrible thing and there is the other on here, the alternate mitigator that says other, where they can decide if there's some in their reasons or their mind, mitigates what this man has done. |
| The Court: | Something years and years ago involving a dog, I just can't see the relevance of that so I'm going to sustain the objection.[63] |

---

[62]McGehee was fourteen years old when this event occurred. See Doc. No. 1, Exhibit 9 at 25-26; 30.

[63]R7 at 1383-1384.

19

Later in her testimony, Ms. Christensen relayed tragic stories about McGehee's sister being beaten. "[McGehee's stepdad, ] Wayne[,] beat Kimber up and Family Services were called in. She had big bruises on the back of her legs they took pictures of."[64]

| | |
|---|---|
| Prosecutor Webb: | You Honor, at this point we're talking about somebody who isn't even the defendant, and I really think we're way far afield from directional testimony. I would ask that we focus on what we're here to do. |
| Mr. Marczuk: | My position is I'm here to try to save his life and if it helps this jury with the background, that's why I am asking. |
| The Court: | Well, I'm going to sustain the State's objection.[65] |

Then, at the close of the sentencing phase and outside the jury's presence, defense counsel, Mr. Marczuk again addressed the exclusion of mitigation evidence.

| | |
|---|---|
| Mr. Marczuk: | Judge, can I go ahead and proffer what I wanted to put on about . . . Ms. Christensen? [Prosecutor] Webb was making a point that and you sustained his objection because he thought the dog information was you felt was not relevant and it was dated. I was just trying to show a pattern as to how violent a family they were because the dogs throats are slit and they were blaming Jason for being the, not the one that did it but that because he wanted a new puppy, God had these animals killed. And I just was trying to show once again the pattern of violence in the family that helped him got him where he was.<br><br>. . . |
| Prosecutor Webb: | . . . I had no idea where he wanted to go with it.  It sounded totally irrelevant to me at the time. . . . I still feel as remote as it was he is not the one that slashed the necks apparently. For all of these reasons, even accepting Mr. Marczuk's characterization of the testimony, I don't think it's relevant or appropriate. |

---

[64]R7 at 1387.

[65]R7 at 1387-88.

| | |
|---|---|
| The Court: | **Well, they haven't really charted, ever since we bifurcated proceedings not only in capital cases but in other cases, it's still uncharted.** To what extent, the Court just allows an endless sequence of antidotes to be presented by the defense. There has to be some limits placed on it. The Court feels like I've given the defense wide latitude for witnesses to come here and testify about things which the State has virtually no information about, no ability to cross examine on, no ability to present rebuttal witnesses. We have family members that could come in here and engage in actual selective memory about things that have happened over a period of 20 years. It makes it very difficult for the Court to rule on these things. I don't know, maybe to some extent it's just wide open and it's just how much time we're going to take and how many different antidotes we get to listen to about an individual's history. But some presumably isolated acts of cruelty to animals that happened years and years ago, I'm still not convinced has any particular relevance but I'm not - - - I mean, there was quite a bit the defendant was allowed to present in the way of testimony that I suspect Mr. Webb just didn't know how to phrase the objection. |
| Mr. Webb: | . . . I guess what I'm saying is if I had known what he was trying to get into, I might still have had objections but I might not. I don't know. But I really had no way to know and at that point I was simply making an objection based on what it sounded like to me. And, you know, I think the objection was well taken. It didn't appear to be relevant matter. The treatment of animals within a family didn't appear - - - wasn't one of the elements of mitigation. I thought we had amply demonstrated the dysfunctional nature of the family, the abandonment by the parents, those kind of things, various acts of cruelty and discipline and this simply seemed to be irrelevancy and that's why I made the objection and, you know, I felt like the Court appropriately ruled in my favor. **Now, with some additional explanation, we now hear there was some, that perhaps it did relate to the dysfunctional family but I feel like at this point we can't go back and correct it. So I'm just simply saying I will accept the defense's characterization but don't see a remedy for it.** |
| The Court: | The Court feels like it's remote in time and some form - - - you know, I suppose we could probably go on, if you had enough family members, you could present antidotes for two or three days. The Court's not given a lot of guidance in what is |

> relevant under the punishment phase of a proceeding. I still feel like it's - - - there's no indication here it's anything other than an isolated incident of years and years ago and I can't see that it has much relevance in the punishment phase of this trial.[66]

Although the trial court did allow the introduction of some of McGehee's background and history, the record demonstrates that the court struggled with its determination of what mitigation evidence was permissible and admissible.[67] However, the law was available to the trial court and to the Arkansas Supreme Court. McGehee actually provided the trial court with the proper authority in his pre-trial motion.[68] He cited *Eddings*, *Lockett*, and *Skipper*.[69] All of these cases clearly explain the role of mitigation evidence in death cases. Moreover, all of these cases were readily available to both courts.

In addition, McGehee properly proffered the substance of Christensen's testimony, he was attempting to submit to the jury.[70] Rule 103(a)(2) of the Arkansas Rules of Evidence provides that, "[i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer [of proof] or was apparent from the context within which questions were asked."[71] McGehee also attempted to introduce evidence from the testimony of McGehee's ex-wife and his maternal grandmother, Peacock. Although McGehee did not proffer the substance of what their

---

[66]R7 at 1421-26 (emphasis added).

[67]*Id*; see also R7 at 1393.

[68]R1 at 297-98.

[69]*Id*.

[70]R7 at 1421-26.

[71]Ark. R. Evid. 103(a)(2).

testimony would have been, the record reflects that it was apparent from the context within which questions were asked, that he was attempting to submit evidence to the jury about his dysfunctional family.[72] In his questioning of McGehee and the connection to animals, defense counsel made it clear from the questions asked that he sought to introduce evidence related to mitigation.[73] Also, in his questioning of Peacock, again, counsel was asking about the neglect of McGehee and his sister and specifics about maltreatment when the state objected. In both of these instances, the record demonstrates that it was apparent from the context what evidence was being sought to introduce even if a proffer was not made. However, the Court need not determine whether or not it was properly preserved. Christensen's testimony was properly preserved and before this Court.

Furthermore, the type of evidence McGehee attempted to get before his sentencer is routinely included and has also been deemed relevant by the United Supreme Court and the Arkansas Supreme Court. McGehee's background and character evidence should have been included. Numerous cases have found that defendants had " . . . the kind of troubled history we have declared relevant to assessing a defendant's moral culpability. *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) ('Evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background . . . may be less culpable than defendants who have no such excuse'); see also *Eddings v. Oklahoma*, 455 U.S. 104, 112,(1982) (noting that consideration of the offender's life history is a 'part of the process of inflicting the penalty of death'); *Lockett v. Ohio*, 438 U.S. 586, 604, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978) (invalidating Ohio law that did not permit consideration of aspects of a defendant's

---

[72]*Id.*

[73]R7 at 1367.

background)."[74] The mitigation evidence McGehee sought to introduce was evidence of repeated patterns of physical and emotional abuse, negligent parenting and traumatic events that occurred either directly to him or in his presence. All of the events arguably were factors in the outcome of the young man he became.[75]

McGehee's petition provides a declaration from Linda Christensen and the testimony she would have provided regarding the family's treatment of animals if she were permitted to continue with her testimony at the sentencing. The Court is particularly concerned by two different stories related to the treatment of animals by McGehee's family while in the presence of McGehee as a baby and as an adolescent.

First, she attests to events from McGehee's life as a young toddler. McGehee's father had a vicious temper and violent tendencies. McGehee's mother "never dared shake [McGehee's father] to wake him up. He always came up with his fists. Robyn [McGehee's mother] said this was due to Vietnam."[76] Christensen went on to state that McGehee's father would "slam [McGehee's mother] up against the fridge or the wall, pull her hair and put his hand over her mouth. Jason saw this go on."[77] McGehee's father continued with this violence on the animals. "The family had two dogs

---

[74]*Wiggins v. Smith*, 539 U.S. 510, 535 (2003).

[75]*Williams v. State*, 347 Ark. 728, 752 (2002) ("Even the slightest evidence of a mitigating circumstance may be submitted to the jury. *Willett v. State*, 335 Ark. 427 (1998).")

[76]Doc. No. 1, Exhibit 9 at 2.

[77]*Id.*

. . . , a Doberman pinscher named Douglas and a mixed breed named Candy.  One day [McGehee's father] grew tired of the family pets, took a knife and cut their throats."[78]

Second, Christensen recounts the story of McGehee's stepdad killing his dog, Dusty. McGehee was very close to the dog and arguably his best friend.  The dog slept at the end of his bed each night and McGehee celebrated Dusty's birthday each year.  Dusty and another dog had gotten into a fight over the dog food.  "Wayne, [the stepdad], got mad.  He got up and kicked Dusty in the side with his cowboy boots as hard as he could. Dusty started bleeding out of his rectum. He lay and suffered and the kids had to watch him die slowly. He was bleeding internally.  By about 5:00 a.m. the next morning, Dusty was dead. I really believe part of Jason died with him. That was the turning point.  Jason was never the same again after that. . . . It took a long time before [Jason] could ever even look at Wayne again and feel good about him.  Funny how just in one second, being angry can change things forever. . . . Killing Dusty was something we were not allowed to talk about. . . . Forgotten. . . . I don't think Jason forgot it."[79]

A few months after Dusty was killed, Jason had the opportunity to get another dog.  His mother was not interested in getting another dog. "Jason started crying.  Then, Jason said something to his mother that horrified me. He said 'Mom, you told me the reason Dusty dies was because God knew I wanted another puppy.'  I though[t] wow, Wayne kills the dog and it ends up being Jason's fault.  What a cop out to tell Jason Dusty got out of the way because God knew Jason wanted another

---

[78]*Id.*

[79]Doc. No. 1, Exhibit No. 9 at 25-26.

puppy. Dusty did not get out of the way. He was brutally kicked and bled to death. He had no choice. To take blame off of the one who did it and blame that kid, a kid with problems anyway, was so wrong. It was easier for Robyn [his mother] to blame Jason than to admit Wayne was far from perfect."[80]

The court finds this evidence to be of the exact nature the Supreme Court intended a sentencer to hear and weigh when imposing the death penalty. McGehee's attorney attempted to get this evidence before the sentencer in his case. He stated to the trial court: "I was just trying to show a pattern as to how violent a family they were because the dogs throats are slit and they were blaming Jason for being the, not the one that did it but that because he wanted a new puppy, God had these animals killed. And I just was trying to show once again the pattern of violence in the family that helped him got him where he was."[81] "My position is I'm here to try to save his life and if it helps this jury with the background, that's why I am asking."[82] Defense counsel attempted on several occasions to get McGehee's turbulent and violent upbringing before the jury. The Arkansas Supreme Court assumed that the testimony was simply about the about the family's attitude towards pets.

Furthermore, the evidence McGehee sought to introduce to the jury was not too dated or remote in time. McGehee was twenty-one years old at the time of the crime. The trial court's refers to these events as remote in time. The events that occurred were during his formative years as a child,

---

[80]*Id*; see also three other McGehee family members recounting the story of Dusty the Dog, Declaration of LaRee Peacock, Doc. No. 1, Exhibit No. 12 at 4; Declaration of Kevin Peacock, Doc. No. 1, Exhibit No. 11 at 2; Declaration of Jon Christensen, Doc. No. 1, Exhibit No. 10 at 1.

[81]R7 at 1421-22.

[82]R7 at 1388.

adolescent, teenager and impacted, if not formed, the person he became. The events occurred five, ten, fifteen and maybe even twenty years ago. However, McGehee was only twenty one at the time of the offense – these events were not too remote in time. By comparison, other death row inmates were able to submit mitigation evidence regarding their upbringing during their sentencing phases. In those cases, the defendants were older than McGehee was at the time of his offense and the events were found to be relevant to mitigation. By comparison, Kevin Wiggins was 27 at the time of his offense[83]; Marcel Williams was 24 at the time of his offense[84]; and Ted Cole a/k/a Jalil Abdul-Kabir was 31 at the time of his offense.[85]   All of these cases addressed the issue of the inclusion of mitigation evidence. All three had turbulent childhoods with verbal and physical abuse or both. The details of each are not necessary. The point is – each of these inmates was older that McGehee at the time of his offense. However, each of these  childhood history's were found to be relevant in the sentencings and were not too remote in time.

Also, the trial court noted that mitigation evidence could go on for days and days. However, McGehee's entire trial lasted four days, commencing on January 5, 1998 and ending on January 8, 1998. The sentencing phase lasted only a few hours. The record does not specifically delineate times but from reviewing the record it is apparent less than a full day was devoted to mitigation evidence.

---

[83]*Wiggins v. Smith*, 539 U.S. 510, 535 (2003); http://www.dpscs.state.md.us/inmate/ search.do?searchType=name&firstnm=kevin&lastnm=wiggins.

[84]*Williams v. Norris*, Case No. 5:02CV00450 JLH, 2007 U.S. Dist. LEXIS 27023, April 11, 2007 (E.D. Ark. 2007); http://www.arkansas.gov/doc/inmate_info/ search. php?dcnum =000943&lastname=Williams&firstname=Marcel&sex=b&agetype=1.

[85]*Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654 (2007); http://www.tdcj.state.tx.us /statistics/deathrow/drowlist/cole.jpg.

The trial court's decision does not satisfy clearly established federal precedent: found in *Penry, Lockett* and their progenies. The jury was not provided with the mitigation evidence intended to be placed before it by these decisions. The record reflects that the trial court recognized a dilemma with admitting the evidence regarding the animal abuse and the lack of any real guidance as to the extent to which said evidence should be received in the mitigation phase.[86] The prosecutor noted that there was no real remedy at that point in the trial and the trial seemingly continued without the evidence being admitted.

The Arkansas Supreme Court reviewed McGehee's case in 1999. *Lockett* and *Eddings* and many of their progenies had been decided at that time. In 1988, in Justice O'Connor's concurring opinion in *Franklin v. Lynaugh,* she explained the significance of mitigation evidence in death cases:

> [T]he principle underlying *Lockett, Eddings*, and *Hitchcock* is that punishment should be directly related to the personal culpability of the criminal defendant. Evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse. . . . Thus, the sentence imposed at the penalty stage should reflect a reasoned moral response to the defendant's background, character, and crime.[87]

All of these decisions represent established law prior to the Arkansas Supreme Court's opinion denying McGehee relief. This clearly established precedent was available to the court but the court applied the law in an unreasonable manner.[88] Indeed, as *Woodson v. North Carolina,* made

---

[86]R7 at 1421-26.

[87]*Franklin v. Lynaugh,* 487 U.S. 164, 184-185 (1988).

[88]*Woodson* in 1976, *Lockett* in 1978, *Eddings* in 1982, *California v. Brown* in 1987 and *Hitchcock* in 1987.

clear, "in capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death."[89]

Here, clearly established federal law was available to the Arkansas Supreme Court. This Court finds that the court applied *Lockett* and its progeny with its statutory application and its case law application in an unreasonable manner. McGehee's claim regarding character and background evidence is granted.

The mitigation evidence may have served as a basis for mercy for the jury to impose a sentence less than death. From the court's statements, it is evident that the trial judge did not evaluate the evidence in light of *Lockett*, *Eddings* and Supreme court precedent.

### The evidence of co-defendants punishment

McGehee next argues that his constitutional rights were violated when the trial court refused to allow him to introduce the judgments of his co-defendants' that were tried before him and received life sentences and not death. Respondent asserts that his claim is procedurally barred from review.

In order to prevail on this claim, McGehee must establish that the Arkansas Supreme Court's decision was contrary to, or an unreasonable application, of federal law.[90] He also must overcome procedural requirements to present his issue to the Court. In order to preserve a claim for relief, a

---

[89]*Penry v. Lynaugh*, 492 U.S. 302, 316 (1989) citing *Woodson v. North Carolina*, 428 U.S. 280 (1976).

[90]28 U.S.C.A. § 2254(d)(1)-(2) (1996).

habeas petitioner must present that claim to the state court and allow that court an opportunity to address the claim.[91]

In *Simpson v. Norris*, the Eighth Circuit explained that a co-defendant's sentence was not relevant mitigation evidence and was not required to be submitted to the jury. The court explained:

> In *Eddings*, the Supreme Court held that a sentencer 'cannot be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' *Id.* at 110 (quoting *Lockett*, 438 U.S. at 604 (plurality opinion)) (emphasis in *Lockett*). The Arkansas Supreme Court held that [the co-defendant's] . . . sentence was not information that had to be submitted to the jury as a mitigating factor because [the co-defendant's] . . . sentence did not shed light on [the defendant's] character, record, or the circumstances of the offense. This seems to us to be quite evidently correct, so we cannot conclude that the court's application of *Eddings* constituted a holding contrary to or involved an unreasonable application of clearly established federal law. We therefore reject this claim.[92]

The same claim was addressed in detail by the district court in *Simpson v. Norris*. There the district court explained that the mitigating circumstance must be relevant to the defendant's punishment. Although the co-defendant's involvement in *Simpson* was arguably less than that of McGehee's codefendants', the result is the same. The court explained,

> Ark. Code Ann. § 5-4-602(4) provides in pertinent part: Evidence as to any mitigating circumstances may be presented by either the state or the defendant regardless of its admissibility under the rules governing admission of evidence in trials of criminal matters, but mitigation evidence must be relevant to the issue of punishment, including, but not limited to, the nature and circumstances of the crime, and the defendant's character, background, history, and mental and physical condition as set forth in § 5-4-605. Thus to be admissible, evidence of mitigating circumstances must be relevant to the issue of the defendant's punishment.

---

[91] *Wooten v. Norris*, No. 5:03CV00370, 2006 U.S. Dist. LEXIS 67479, at *8-9 (E.D. Ark. September 19, 2006) (citing *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

[92] *Simpson v. Norris*, 490 F.3d 1029, 1032-1033 (8th Cir. 2007).

The disposition of [the codefendant's] charges, which Simpson sought to offer to the jury as a mitigating circumstance, had nothing to do with Simpson's character, record, background, history, condition, or the circumstances of his crime. This information was not relevant to the issue of Simpson's punishment, and the trial court therefore did not err in refusing to submit the proffered forms to the jury.

. . .

The clearly established federal law is that the sentencer must "not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (emphasis in the original). The opinion of the Arkansas Supreme Court, like the Arkansas statute, tracks the language of *Lockett*. The opinion is not contrary to *Lockett*. Nor is it an unreasonable application of *Lockett*.[93]

McGehee presented his claim to the Arkansas Supreme Court on two separate occasions. First, in *McGehee* I, the Arkansas Supreme Court denied relief and held:

[McGehee's] theory was that because the co-defendants were equally liable as accomplices to the capital murder, they should be equally punished. [He] cites no authority or convincing argument in support of his theory, and we are not aware of any. . . . In any event, Appellant succeeded in getting part of this information to the jury when Epps stated on cross-examination that he was currently imprisoned at the Varner unit of the Arkansas Department of Correction and that he was not on death row.[94]

Then in *McGehee* III, the Arkansas Supreme Court denied relief again and held,

[S]uch an argument has been rejected by this court. The issue is whether the imposition of the death penalty is arbitrary. In *Echols v. State*, we noted that we no longer required proportionality reviews of death sentences, citing *Willett v. State*, and noting our discussion in *Williams v. State*, where we stated that a comparative-proportionality review is not constitutionally mandated in every case where the death sentence is imposed, citing *Pulley v. Harris*, 465 U.S. 37 (1984). We went on to note that our legislature, by enacting recent sentencing procedures, has provided a statutory check on arbitrariness by requiring a bifurcated proceeding where

---

[93]*Simpson v. Norris*, No. 5:04-CV-00429 JLH, 2006 U.S. Dist. LEXIS 35155, *42-43 (May 30, 2006).

[94]*McGehee* I, 338 Ark. at 174-175 (1999) (citations omitted).

the jury is provided with information on aggravating and mitigating circumstances, and with standards in the use of that information. See Ark. Code Ann. §§ 5-4-103, 5-4-603 -605 (Repl. 1997 and Supp. 2001).[95]

The jury found McGehee guilty of the kidnaping and capital murder of both John Melbourne, Jr.; that he caused his death in an especially cruel and depraved manner and to also avoid arrest. [96] McGehee's argument is essentially that his codefendants were as culpable as he was and since they received life sentences he should as well. However, evidence of his codefendants sentences casts no light on McGehee's culpability. It does not have a tendency to diminish or reduce McGehee's responsibility. It is not a mitigating circumstance.

Furthermore, Epps testified during his direct examination and cross-examination that he was housed at the Varner Unit and had received a life without possibility of parole sentence.[97] The trial court instructed the jury: Form 2 lists some factors that you may consider as mitigating circumstances but the jury was not limited to this list. They could write in mitigating circumstances they determined existed in the "Other" section.[98] The jury was not precluded from considering an aspect of McGehee's character or record or any circumstances of the offense nor does the record show that McGehee was prejudiced by the trial courts refusal to instruct the jury to consider the codefendants' sentences as a mitigating circumstance.

---

[95]*McGehee* III, 348 Ark. 395, 413 (2002).

[96]R9 at 7.

[97]R5 at 974.

[98]R9 at 8, 10-11.

McGehee has failed to prove that the Arkansas Supreme Court's opinion was contrary to or an unreasonable application of federal law.[99] The Arkansas Supreme Court's opinion follows *Lockett* and *Pulley*. The opinion is not contrary to or an unreasonable application of federal precedent. The verdict and sentence indicate that the jury believed the prosecution's theory that McGehee was the authoritarian of the group and led the codefendants in their criminal activities.

Part two of McGehee's second claim is dismissed.

### Claim #3: McGehee's constitutional rights were violated because his death sentence is disproportionate to his co-defendants' sentences.

McGehee's third claim is that his constitutional rights were violated because his death sentence is disproportionate to his co-defendants. Respondent submits that McGehee's claim is without merit and that the Arkansas Supreme Court's opinion is not in violation of § 2254.

There were five individuals involved in the death of John Melbourne, Jr: Candace Campbell, Robert Diemert, Benjamin McFarland, Christopher Epps and Jason McGehee. Campbell and Diemert testified for the State against McGehee. They both pled guilty after McGehee's trial.[100] McFarland was convicted of capital murder and kidnaping and sentenced to life without the possibility of parole and then life imprisonment for his offenses.[101] Epps also testified for the State. He was also found

___

[99]The Arkansas Supreme Court's opinion is consistent with *Lockett* with regard to mitigation evidence and *Pulley* addressing proportionality reviews.

[100]Campbell pled guilty to false imprisonment, first degree battery and second degree forgery. She was sentenced to ten years concurrent on the false imprisonment and battery and then ten years suspended on the forgery. She has been paroled. Diemert pled guilt to false imprisonment and second degree battery. He was sentenced to ten years and six years to run concurrent. He has been paroled as well.

[101]*McFarland v. State*, 337 Ark. 386 (1999).

33

guilty of kidnaping and capital murder and was sentenced to life without parole for the murder and 40 years for kidnaping.[102] McGehee was the last to be tried.

The law is clear. "Comparative proportionality review of death sentences is not constitutionally required. *Pulley v. Harris*, 465 U.S. 37, 51 (1984). Arkansas conducts such a review as part of the appellate review process. *Ruiz v. State*, 280 Ark. 190, 655 S.W.2d 441 (1983)."[103]

The Arkansas Supreme Court has held numerous times that " . . . we noted that we no longer required proportionality reviews of death sentences, citing *Willett v. State*, 322 Ark. 613, 911 S.W.2d 937 (1995), and noting our discussion in *Williams v. State*, 321 Ark. 344, 902 S.W.2d 767 (1995), where we stated that a comparative-proportionality review is not constitutionally mandated in every case where the death sentence is imposed, citing *Pulley v. Harris*, 465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984). We went on to note that our legislature, by enacting recent sentencing procedures, has provided a statutory check on arbitrariness by requiring a bifurcated proceeding where the jury is provided with information on aggravating and mitigating circumstances, and with standards in the use of that information. *See* Ark. Code Ann. §§ 5-4-103, 5-4-603 -605 (Repl. 1997 and Supp. 2001)."[104]

Additionally, the Eighth Circuit has explained this principle: "[t]he Supreme Court has rejected similar contentions, noting in *McCleskey v. Kemp*, 481 U.S. 279, 306-07, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987), that a defendant cannot 'prove a constitutional violation by demonstrating

---

[102]*Epps v. State*, No. CR 97-1490, 1999 Ark. LEXIS 201 (1999).

[103]*Pickens v. Lockhart*, 4 F.3d 1446, 1454 (8th Cir. 1993).

[104]*McGehee III*, 348 Ark. 395, 413 (2002).

34

that other defendants who may be similarly situated did not receive the death penalty.' *Id.*; see also *United States v. Chauncey*, 420 F.3d 864, 876 (8th Cir. 2005) (remarking that "a defendant's sentence is not disproportionate merely because it exceeds his co-defendant's sentence"), cert. denied, 547 U.S. 1009, 126 S. Ct. 1480, 164 L. Ed. 2d 258 (2006)."[105]

McGehee presented his claim to the Arkansas Supreme Court and the court denied relief citing *Pulley* and also noted that McGehee's argument was "flawed in that neither Campbell nor Diemert were charged, tried, or sentenced for murder."[106]  McGehee has failed to prove that any constitutional violation occurred and also failed to prove that the Arkansas Supreme Court's opinion was contrary to or an unreasonable application of federal law.

McGehee's third claim is dismissed.

### Claim #4:  McGehee's death sentence violates his constitutional rights because witnesses against McGehee have recanted or amended their accounts in a way that mitigates his role in the offense.

McGehee's fourth claim is that his constitutional rights are being violated because he is not eligible for the death penalty due to his lesser involvement. He also claims that his constitutional rights are being violated because the state knowingly used perjured testimony to sentence him to

---

[105]*United States v. Johnson*, 495 F.3d 951, 961 (8th Cir. 2007)("It bears mention, too, that although we assume that the government presented similar evidence in both [co-defendants'] trials, the evidence may have differed slightly. In particular, . . . the mitigation evidence. . . . Two juries hearing similar, but not identical, evidence may well reach different conclusions regarding the proper penalty for their respective defendants. In addition, different verdicts may permissibly reflect not only differences between the facts presented at trial, but differences between the juries themselves. . . . One cannot expect that two different juries - each of which is composed of citizens with diverse backgrounds and values - must necessarily reach the same verdict.)"; see also *United States v. Chauncey*, 420 F.3d 864, 876 (8th Cir. 2005); *United States v. Jones*, 145 F.3d 959, 963 (8th Cir. 1998).

[106]*McGehee* III, 348 Ark. 395, 413 (2002).

death.  Specifically, McGehee claims that new evidence in the form of recantments has become available that was not available at trial or during his post-trial proceedings.  McGehee claims that three of his co-defendants have amended or recanted their testimony regarding McGehee's participation in the death of John Melbourne, Jr.  He asserts that the declarations minimize his involvement in the death of Melbourne and demonstrate that he was not the ring leader. He further asserts that since he was not more culpable than the others or the ring leader and that he should not be given the death penalty.  McGehee also claims that his Eighth Amendment rights will be violated if he is put to death because his sentence of death is based on perjured testimony.[107]  Further, he claims that 2254 (e)(2) prohibiting a hearing since he did not bring this claim in state court is not applicable because he had no control over the receipt of the recantations.[108] Respondent asserts that his claim is procedurally defaulted and default has not been excused.

It is undisputed that this claim is procedurally defaulted.  McGehee raises this claim for the first time in his habeas petition.  McGehee must overcome such for the court to review his claim.  A claim is procedurally defaulted if not fairly presented in state court before raising it in federal court.[109]

First, McGehee claims he has excused procedural default because he is actually innocent because of his lesser culpability and then not eligible for the death penalty. "A habeas petitioner who raises a gateway claim of actual innocence must satisfy a two-part test in order to obtain review of otherwise procedurally barred claim. First, the petitioner's allegations of constitutional error must be

---

[107]Doc. No. 1 at 56-57.

[108]*Id.* at 58.

[109]*Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc).

supported with new reliable evidence not available at trial.[110]  Second, the petitioner must establish

that it is more likely than not that no reasonable juror would have convicted him in light of the new

evidence.[111]

> Procedural default is a bar to a claim unless that claim falls into several narrow
> exceptions. *Coleman*, 501 U.S at 750. One notable exception is actual innocence.
> Procedurally barring a claim that establishes actual innocence is considered a
> fundamental miscarriage of justice.
>
> . . .
>
> *Herrera* claims are of a substantive nature (actual innocence), while *Schlup* claims are
> of a procedural nature (obstacles such as procedural default-also overcome by actual
> innocence). *Cornell v. Nix*, 119 F.3d 1329, 1334 (8th Cir. 1997). A positive
> determination under either standard is rare and limited. *Herrera*, 506 U.S. at 404;
> *Schlup*, 513 U.S. at 315. The burden of proof under *Herrera* is higher than under
> Schlup, since exceptions are permitted only for 'truly persuasive demonstrations of
> actual innocence. *Herrera*, 506 U.S. at 426-27.  Under *Schlup*, a [defendant] must
> show it is more likely than not that no reasonable juror would have convicted him in
> light of the new evidence. *Schlup*, 513 U.S. at 327.[112]

McGehee's claim fails under either *Herrera* or *Schlup* and he is barred on this federal claim.

To prevail, McGehee, " . . . [m]ust show that it is more likely than not that no reasonable juror would

have convicted him in the light of the new evidence. [McGehee] . . . is required to make a stronger

showing than that needed to establish prejudice. At the same time, the showing of 'more likely than

not' imposes a lower burden of proof than the 'clear and convincing' standard required under *Sawyer*.

---

[110]*Schlup*, 513 U.S. at 327-28.

[111]*Id.* at 327; see also *Osborne v. Purkett*, No. 04-1714, 2005 U.S. App. LEXIS 11825 (8th Cir. June 21, 2005).

[112]*Cox v. Burger*, 398 F.3d 1025, 1031-1032 (8th Cir. 2005).

The *Carrier* standard thus ensures that petitioner's case is truly "extraordinary," *McCleskey*, 499 U.S. at 494, while still providing petitioner a meaningful avenue by which to avoid a manifest injustice."[113]

Moreover, the Supreme Court has stated "[r]ecantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction."[114]

Here, the recantations that McGehee claims are his gateway to escape his sentence do not do much more than recount the events that were testified to at the trial. The declarations come some four years later after each of the co-defendants had been adjudicated. Each seems to reflect upon the declarant's mistakes at that particular time in their life by acknowledging excessive drinking, use of drugs and lack of understanding they each had for human life. The Court finds no new evidence or evidence of a new claim. None of the information in the declarations are "recantments" that would come close to satisfying the standard that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." The declarants may admit more to their involvement but the Court does not agree that the declarations demonstrate that McGehee was less culpable, less responsible or not eligible for the death penalty. Whether labeled recantments or amendments, after reading the declarations in their entirety, the Court finds no merit in McGehee's argument.

---

[113]*Schlup v. Delo*, 513 U.S. 298, 327 (1995).

[114]*Dobbert v. Wainwright*, 468 U.S. 1231, 1233-1234 (1984).

Second, McGehee claims his constitutional rights are being violated because the state used perjured testimony. The law is clear that the knowing use of perjured testimony by a prosecutor or a court is impermissible but there is no evidence of that in this case. "It is well settled that to obtain a conviction by the use of testimony known by the prosecution to be perjured offends due process. *Mooney v. Holohan*, 294 U.S. 103; *Pyle v. Kansas*, 317 U.S. 213."[115] However, McGehee fails to provide any support for this argument. The Court fails to find any support of this claim and finds McGehee's fourth claim is without merit and dismissed.

### Claim #5:  McGehee's constitutional rights were violated by the use of victim impact testimony in violation of *Ring v. Arizona*.

McGehee's fifth and final claim is that his constitutional rights were violated by the use of victim impact  evidence in violation of *Ring v. Arizona*.  Respondent submits that the Arkansas Supreme Court's opinion is not contrary to or an unreasonable application of federal law.

McGehee bears the burden of proving that the Arkansas Supreme Court's decision was contrary to or an unreasonable application of federal law and he must have presented and exhausted his state remedies before he may present his claim to this Court.[116]

McGehee claims that victim impact evidence was used in his case, specifically the testimony of John Melbourne, Sr., the father of the victim. McGehee asserts that the decision of the Supreme Court in *Ring v. Arizona*, establishes the that the consideration of victim impact evidence in his case violated his constitutional rights. He also urges the court to apply *Ring* retroactively and find the

---

[115]See *Sanders v. Sullivan*, 863 F. 2d 218 (2nd Cir. 1988); Cf. *Hysler v. Florida*, 315 U.S. 411, 413 (1942) ("mere recantation of testimony" does not justify voiding a conviction on due process grounds).

[116]28 U.S.C. § 2254 (d)(1)-(2);  *Krimmel v. Hopkins*, 56 F.3d 873 (8th Cir. 1995).

Arkansas statute inconsistent with federal law.  McGehee asserts that § 5-4-602 (4), allowing victim impact evidence is unconstitutional because it imposes a substantive law in a procedural statute and fails to provide guidance about how to consider the evidence.

In *Ring v. Arizona*, the Supreme Court held that pursuant to the Sixth Amendment, capital defendants were entitled to trial by jury and required that a jury, not a judge, "find an aggravating circumstance necessary before the imposition of the death penalty."[117]  Shortly after its opinion in *Ring*, the Supreme Court handed down its opinion on the question of whether *Ring* should be applied retroactively in *Schriro v. Summerlin*.[118]  The Court held that, "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review."[119]

McGehee presented his argument to the Arkansas Supreme Court in *McGehee* III.  McGehee claimed that his counsel was ineffective for dropping the victim impact issue.  In denying relief, the Arkansas Supreme Court held:

> McGehee argues his counsel was ineffective in failing raise the issue of the constitutionality of victim-impact evidence on direct appeal. McGehee challenges the constitutionality of Act 1089 of 1993, alleging it is void for vagueness because it requires a jury to consider victim-impact evidence under Ark. Code Ann. § 5-4-602(4) (Repl. 1997) in the context of weighing aggravating and mitigating circumstances under Ark. Code Ann. § 5-4-603 and § 5-4-604. He also argues that it gives insufficient guidance to the jury and judge. McGehee also discusses the use of victim-impact testimony to prove aggravating factors. McGehee then refers to an additional aggravating circumstance submitted to the jury, which is a reference to the victim-impact testimony.

---

[117]*Ring*, 536 U.S. 584, 609 (2002).

[118]*Schriro*, 542 U.S. 348, 453 (2004).

[119]*Id.*

40

The arguments as presented have already been presented to this court and rejected. *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998). Again, on the argument presented, this court has already found victim-impact evidence relevant and admissible on this matter at issue here regarding whether the death penalty should be imposed. *Lee v. State*, 327 Ark. 692, 703, 942 S.W.2d 231 (1996). Speaking generally, in *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995), we upheld the underlying constitutionality of victim-impact testimony. See *Nooner*, 322 Ark. 87, 907 S.W.2d 677, at 688-89 (citing *Payne v. Tennessee*, 501 U.S. 808, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991)). This decision has been reaffirmed since. *Fudge v. State*, 341 Ark. 759, 20 S.W.3d 315 (2000); *Engram v. State*, 341 Ark. 196, 15 S.W.3d 678 (2000). Based on the arguments presented, the admission of the victim-impact evidence in this case was consistent with prior case law. Thus, under these facts and arguments there is no merit to the claim of ineffective assistance of counsel.[120]

The Arkansas Supreme Court's opinion is not contrary to or an unreasonable application of federal law. McGehee's argument is without merit. The same argument was made in *Johnson v. Norris*.[121]

In *Johnson v. Norris*, the district court addressed the same claim McGehee has presented in his petition. In dismissing the claim, the court explained:

> Johnson's final claim is that clearly established federal law requires that any aggravating circumstance be proven to a jury beyond a reasonable doubt, and that the victim impact process has no provision for that. For support, he cites *Ring v. Arizona*, which held that the jury, not the judge sitting alone, must determine the presence or absence of an aggravating factor that will determine whether a sentence of death is imposed. He concedes that in *Schriro v. Summerlin*, the court held that Ring was not retroactive to cases on collateral review. *Schriro*, 542 U.S. 348, 351-54, 124 S. Ct. 2519, 2522-24, 159 L. Ed. 2d 442 (2004). He argues, however, that *Schriro* does not apply because it discussed the retroactivity of the portion of *Ring* holding that a jury must determine essential facts that determine the defendant's sentence and not a separate portion of *Ring* holding that facts counted as aggravating circumstances must be proven beyond a reasonable doubt.

---

[120]*McGehee* III, 348 Ark. 395, 414-415 (2002).

[121]*Johnson v. Norris*, Case No. 5:06CV00185-JLH, 2007 U.S. Dist. LEXIS 59893, 67-68 (August 14, 2007 E.D. Ark.).

Johnson apparently refers to the following statement in *Ring*, which was made in the context of a discussion of *Apprendi v. New Jersey*: "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact -- no matter how the State labels it -- must be found beyond a reasonable doubt." *Ring*, 536 U.S. at 602, 122 S.Ct. at 2434.   Here, the State did not make an increase in the authorized punishment contingent on finding any fact regarding victim impact. Johnson's real argument is not that the jury was instructed that it could find a fact by a standard lower than the reasonable doubt standard; Johnson's real argument is that the jury was given no instruction regarding the victim impact evidence. However, there was not and is not any federal law clearly established by the Supreme Court of the United States requiring that if victim impact evidence is introduced the jury must be instructed as to how to consider that evidence.[122]

Here, as in *Johnson*, the court fails to find merit in McGehee's argument. The decision of the Arkansas court is not contrary to or nor an unreasonable application of any federal law as clearly established by the Supreme Court of the United States. McGehee's fifth claim is dismissed.

---

[122]*Id.*

42

## Conclusion

Based on conclusions of law above, McGehee's petition for writ of habeas corpus is GRANTED in part and DENIED in part.

The decision of the Arkansas Supreme Court to exclude McGehee's background and character mitigation evidence is an unreasonable application of clearly established federal precedent and McGehee's death sentence must be set aside. The State is directed to try the penalty phase of McGehee's trial again within 120 days of entry of the Judgment and Decree entered pursuant to this Opinion or change his sentence to life without parole. Petitioner's remaining claims are dismissed.

IT IS SO ORDERED this 2 day of January, 2008.

James M. Moody
United States District Judge

43